272 So.2d 363 (1973)
STATE of Louisiana
v.
Gary HIGHTOWER.
No. 52805.
Supreme Court of Louisiana.
January 22, 1973.
*364 William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Frank J. Gremillion, Asst. Dist. Atty., for plaintiff-relator.
Fred A. Blanche, III, Woodson T. Callihan, Jr., Baton Rouge, for defendant-respondent.
HAMLIN, Chief Justice.
In the exercise of our supervisory jurisdiction, we granted the State's application for writs in order that we might review the district court's judgment sustaining defendant's motion to suppress evidence seized upon the search of defendant's apartment. Art. VII, Sec. 10, La.Const, of 1921.
On December 8, 1971, D. A. Invest. J. M. Mergen and Dy. W. Ryals swore out an affidavit which recites in part:
"That probable cause does exist for the issuance of a search warrant authorizing the search of Apartment # 62, Mark III Apartments, 2720 Alaska St., Baton Rouge, La.
"A quantity of Narcotic drugs,
"Marijuana, and L.S.D. and equipment used in their administration and use is (are) believed to be secreted or concealed, and such probable cause is based upon the following: Affiants inform the court that on Nov. 30, 1971, a confidential and reliable informant who has proven reliable in the past by giving the affiants information which has led to the arrest of several persons in the Baton Rouge area for various narcotic violations, did while working under the supervision of the affiants purchase a `lid' of marijuana from a subject in the above apartment. Affiants further inform the court that the time the informant made the above buy he was under the direct observation of the affiants.
"Affiants further inform the Court that on November 23, 1971, the same informant purchased a quantity of hashish from the occupant of apartment # 61, 2720 Alaska St. and further that the occupants of both of these apartments are close associates and visit each others apartments regularly."
Pursuant to the above affidavit, a warrant issued and was executed on December 8, 1971. The return to the search warrant *365 recites that the following property was found and seized:
"One (1) matchbox, containing suspected Marijuana seeds.
"A brown vegetable-like substance, in a frying pan, suspected to be Marijuana.
"Three (3) Plastic bags, containing a small amount of green vegetable-like material, suspected to be Marijuana."
On April 7, 1972, a bill of information was filed against Gary Hightower and Jeff Young, charging that on December 8, 1971, they "unlawfully did attempt to violate L. R.S. 40:971(c) in that they knowingly and intentionally did attempt to possess a controlled dangerous substance, to-wit: Marijuana."
A motion to suppress was filed, and after hearing on July 6, 1972, the trial judge sustained the motion, stating:
"But under the articulated facts of this situation and articulated facts of this application or affidavit of this search warrant, I think the error that the Judge fell into, when he considered a reference to a prior sale from another premise, which should not have been a factor in considering whether or not probable cause existed to issue this warrant on December 8th for a sale that had been made in another premise on November 30th. So, really, you got a week thereNovember 23rd they made a buy, allegedly made a buy in Apartment 61; and on November 30th they allegedly made a buy in Apartment 62, but we don't know from whom; but I see no connection between the 61 and 62 in determining whether or not on the 8th there was probable cause to search apartment 62."
The State contends that the trial court erred in ruling that a lapse of nine days from the receipt of the information to the execution of a search warrant is of itself sufficient to render the search invalid.
Article 162 of the Code of Criminal Procedure provides:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
"A search warrant shall include a reasonable description of the things to be seized. When a warrant authorizes the search of a place, it shall designate the place to be searched. * * *"
Article 163 of the Code of Criminal Procedure recites that a search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance. The Official Revision Comment states that the nine-day period formerly provided for the expiration of the warrant has been increased to ten days.
The nine days which elapsed between November 30, 1971, the date of the alleged purchase of a "lid" of marijuana from a subject in defendant's apartment and the date of the application for the instant search warrant and the date of search, December 8, 1971, do not constitute remoteness of time under the facts and circumstances of this case. Had the search warrant issued on November 30, 1971, ten days were permitted by Article 163 supra for its execution; December 8, 1971 was therefore within the contemplated legal limitation. Police investigative work concerning dangerous substances is technical, studied, and secret. It is time-consuming because of the peculiarity of the matter involved.
The important issue herein involved is whether the affidavit supra expressed probable cause for the issuance of the instant search warrant.
In the trial court, defendant argued that the affidavit supra was deficient for establishing probable cause for the issuance of the warrant, and that the marijuana transaction recited in the affidavit was stale and inadequate.
*366 In United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the United States Supreme Court stated:
"While a warrant may issue only upon a finding of `probable cause,' this Court has long held that `the term "probable cause" means less than evidence which would justify condemnation,' Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364, and that a finding of `probable cause' may rest upon evidence which is not legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311, 79 S.Ct. 329, 332, 3 L. Ed.2d 327. As the Court stated in Brinegar v. United States, 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, `There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.' Thus hearsay may be the basis for issuance of the warrant `so long as there * * * [is] a substantial basis for crediting the hearsay.' Jones v. United States, supra, 362 U.S. [257], at 272, 80 S.Ct. [725], at 736 [, 4 L.Ed.2d 697]. And, in Aguilar we recognized that `an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is `informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved `whose identity need not be disclosed * * * was "credible" or his information "reliable." "Aguilar v. State of Texas, supra, 378 U.S. [108], at 114, 84 S.Ct. [1509], at 1514 [12 L.Ed.2d 723]."
In speaking of the decisions above quoted and cited, the Court In Ventresca stated: "These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (Emphasis ours.) See, 47 Am.Jur., Searches and Seizures, Secs. 21-26, pp. 516-519; United States v. Permisohn, D.C., 339 F.Supp. 52 (1971).
In Berger v. State of New York, 388 U. S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the United States Supreme Court held that probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.
The decisions of the United States Supreme Court concerning Fourth Amendment probable cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).[1]
*367 Any reasonable and prudent man, if he had had in his possession the information which D. A. Invest. J. M. Mergen and Dy. W. Ryals had at the time they applied for the search warrant to search defendant's apartment, would have believed that there was probable cause for the search of the said apartment for dangerous substances. It thus follows that the judge who issued the present warrant was supplied by the officers with sufficient information to make an independent judgment that probable cause existed and that he was justified in issuing a search warrant. As stated in Ventresca, supra, "probable cause" means less than evidence which would justify condemnation. Cf. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
Guilt or innocence found by a jury at the end of a trial is not to be confused with the finding that should be made at the hearing of a motion to suppress. The hearing of such a motion does not demand the strict and rigid formalities of trial; hearsay, if credible, may be the basis for the issuance of a search warrant; the objects seized should not be suppressed from evidence merely because of strained technicalities. Cf. United States v. Thomas, D.C.App., 294 A.2d 164; 409 U.S. 992, 93 S.Ct. 341, 34 L.Ed.2d 258 (1972); 409 U.S. 1006, 93 S.Ct. 448, 34 L.Ed.2d 296.[2]
It is true as stated by the trial judge at the hearing of the motion to suppress that some searches could be embarrassing and result in the charging of an innocent host and hostess. However, this is just an unfortunate coincidence of the conduct of guests reflecting on his host and hostess. Certainly, innocent parties would be entitled to exonerate themselves and prove that they did not cooperate in the possession of dangerous substances.
The addition to the affidavit of an allegation respecting the friendship which existed between the defendant and his neighbor concerns a matter which will probably be adduced in evidence. If adduced, it will be considered by the jury in its deliberations. We find that probable cause was expressed in the affidavit, supra, without the additional paragraph concerning *368 the relationship of the apartment residents.
We conclude that probable cause was expressed in the instant affidavit, and that it was sufficient and adequate (not state) for the issuance of a search warrant directing the search of defendant's apartment. The trial judge therefore should have denied the motion to suppress the evidence herein seized. Cf. State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970).
For the reasons assigned, the Writ of Certiorari herein issued is made peremptory; the judgment of the trial court which sustained the motion to suppress is reversed and set aside; the case is remanded to the trial court for further proceedings not inconsistent with this opinion.
Reversed and remanded.
BARHAM, J., dissents and assigns reasons.
TATE, J., joins in BARHAM, J.'s dissent.
DIXON, J., dissents.
BARHAM, Justice (dissenting).
The defendant argues that the search warrant of December 8, 1971, based upon an affidavit (quoted in full in the majority opinion) alleging a sale of marijuana on November 30, was not issued upon probable cause since this single transaction is too stale and too inadequate to sustain the issuance of the warrant eight days after that occurrence. I agree with the defendant and with the district judge. The rule of law governing this case is clear, reasonable, and logical, and I have no difficulty in concluding under its application that the warrant issued in the instant case was illegal.
It is hornbook law and has been for 50 years that remoteness of the facts used to justify the issuance of a search warrant must be considered in light of the total circumstances in order to determine whether they support probable cause at the time of the issuance of the warrant. The very requirement that an affidavit for search warrant give the time of the occurrence of the facts relied upon comes from the necessity that there be proof within the affidavit that probable cause exists thenthat is, at the time the warrant is issued. The judge determining probable cause must believe that the happenings alleged to have occurred on a previous occasion give rise to a probability that the illegal act or condition continued to exist at the time of the warrant. The general rule is that the nearer the time of the factual occurrence to the execution of the affidavit, the more likely can probable cause be justified at the moment of the warrant. 4 Wharton's Criminal Law and Procedure (Anderson's ed.) § 1564.1; Anno., 162 A.L.R. 1406, 1411; Anno., 100 A.L.R.2d 525, 531; Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).
The earlier cases where the affidavit was executed some time after the actual occurrence relied upon for establishing probable cause arose for the most part in the search of premises for illegal liquor during Prohibition. The cases in this context, decided principally during the '20's and '30's, are too numerous to discuss individually. In these cases throughout the country, except for very isolated instances, the determination of staleness of time for probable cause when the warrant was issued was made under the sufficiency of information in the affidavit for establishing probable cause for a continuing operation. The remoteness of the affidavit from the occurrence had only some weight in this determination. People v. De Geovanni, 326 Ill. 230, 157 N.E. 195 (1927);[1] Murby *369 v. United States, 2 F.2d 56 (1st Cir. 1924);[2] United States v. McKay, 2 F.2d 257 (D.C.Nev.1924);[3] Neal v. Commonwealth, 218 Ky. 718, 292 S.W. 314 (1927);[4] State v. Gardner, 74 Mont. 377, 240 P. 984 (1925);[5] Syrakas v. State, 227 Wis. 59, 277 N.W. 621 (1938);[6] Siden v. United States, 9 F.2d 241 (8th Cir. 1925);[7] State v. Best, 8 N.J.Misc. 271, 150 A. 44 (1930);[8] Rupinski v. United States, 4 F.2d 17 (6th Cir. 1925).[9] In these earlier cases, whatever the holding of the court as to probable cause at the time of issuance of the warrant, invariably a determination on probable cause was made on other facts in the affidavit from which the issuing officer could determine whether the recited illegal operation probably still existed.
The more current jurisprudence, which following this general line of reasoning, places greater emphasis, in determining whether the warrant issues on a showing of probable cause at that very time, on the staleness of time and on whether the affidavit contains other supportive facts of continuity of the illegal condition. See United States v. Ramirez, 279 F.2d 712 (2nd Cir. 1960);[10] People v. Siemieniec, 368 Mich. 405, 118 N.W.2d 430, 100 A.L. R.2d 522 (1962);[11] People v. Wright, 367 Mich. 611, 116 N.W.2d 786 (1962);[12] Irby v. United States, 114 U.S.App.D.C. 246, *370 314 F.2d 251 (1963);[13] People v. Montgomery, 27 Ill.2d 404, 189 N.E.2d 327 (1963);[14] United States v. Williams, 351 F.2d 475 (6th Cir. 1965);[15] Durham v. United States, 403 F.2d 190 (9th Cir. 1968).[16]
Two cases cited by the State are not dispositive of the issues raised by the affidavit and warrant here under consideration. Franklin v. State, 437 S.W.2d 260 (Tenn.Cr.App.1969), actually determined that the search was made as an incident to a lawful arrest. In State v. Monteith, 4 Or.App. 90, 477 P.2d 224 (1970), the affiant stated he had purchased hashish on January 25, and also on February 6 had observed hashish and apparatus for smoking hashish and marijuana on the premises. The affiant further stated that the premises were frequented by persons known to affiant to use marijuana, and that to his personal knowledge the premises were frequently used for parties at which unlawful drugs were used. A search warrant issuing on affidavit made eight days later was held to be valid. The court stated: "* * * Reading the facts set forth in the affidavit in a common-sense manner, the magistrate would be entitled to conclude that the resident of the premises named in the affidavit had a continuing involvement with narcotic drugs, and that there was a probability of a continuing presence of narcotics on the premises. * * *" (Emphasis supplied.) The affidavit in the Monteith case is clearly without similarity to the affidavit to be evaluated here.
It is my conclusion that an affidavit indicating one isolated sale of marijuana by some person in an apartment, not necessarily the owner,[17] eight days prior to the affidavit for search warrant with no other facts or circumstances to support a finding of a continuing illegal activity would not establish probable cause for the warrant. This conclusion is made not solely on the basis of remoteness but upon the basis that the affidavit fails to disclose any fact or circumstance leading to a belief that more marijuana had been and might continue to be possessed by one who was legally on the premises or that the premises were used for the continuing operation of illegal sales of marijuana. The affidavit here does not *371 satisfy constitutional requirements. It fails to meet even our Code of Criminal Procedure requirement that a search warrant shall issue upon affidavit reciting facts establishing probable cause. C.Cr.P. Art. 162. The facts contained in this affidavit do not establish probable cause that at the moment the warrant was sought, any illegal activity was performed or any contraband was present on the premises. The affidavit establishes only that on a previous occasion an illegal act had occurred on the premises between someone and an informant. I agree with the trial court that the motion to suppress should be sustained.
For these reasons I respectfully dissent.
TATE, J., concurs.
NOTES
[1] In Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623. 10 L.Ed.2d 726 (1963), the United States Supreme Court stated: "In Mapp v. Ohio, 367 U.S. [643], at 646-647, 657, 81 S.Ct. [1684], at 1686-1687, 1692-1693, 6 L.Ed.2d 1081, we followed Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886), which held that the Fourth Amendment, implemented by the self-incrimination clause of the Fifth, forbids the Federal Government to convict a man of crime by using testimony or papers obtained from him by unreasonable searches and seizures as defined in the Fourth Amendment. We specifically held in Mapp that this constitutional prohibition is enforceable against the States through the Fourteenth Amndment. * * *"
[2] In State of New Jersey v. William P. Ebron. 61 N.J. 207, 294 A.2d 1 (1972), the Supreme Court of New Jersey pertinently stated: "* * * The Fourth Amendment to the Federal Constitution and Article I, paragraph 7 of the Constitution of this State, in almost identical language, forbid unreasonable searches and seizures and direct that no search warrant shall issue except upon probable cause. Probable cause has proven to be an elusive concept. It is something more than unsupported suspicion but may be less than proof needed to convict. State v. Davis. 50 N.J. 16, 23, 231 A.2d 793 (1967). It may rest upon evidence not competent at a trial, as for instance upon credible hearsay. State v. Kasabucki, 52 N.J. 110, 116-117, 244 A.2d 101 (1968). Where the allegations contained in the affidavit are solely the report of an unidentified informant there must be, in the totality of proofs submitted to the issuing magistrate, something from which he can reasonably conclude that the informer is trustworthy and something further in the way of `underlying circumstances' sufficient to support an independent judgment on his part as to the validity of the facts set forth. State v. Perry, 59 N.J. 383, 389, 283 A.2d 330 (1971); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). When the informant's statement fails to meet this `two-pronged test,' the affidavit may nevertheless be sufficient if elsewhere in the application there is enough to `permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed.' Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1949). See also, Draper v. United States. 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). * * *"
[1] Affidavit five days after purchase of liqquor by affiant stated the place where purchase was made was a saloon and contained a quantity of liquor. The court held there was probable cause that the liquor was still possessed on the premises at the time of the warrant.
[2] Affidavit executed four days after purchase of beer disclosed that the place of purchase was a saloon. It was held: "* * * think the commissioner could reasonably infer therefrom that the same line of business was being conducted there 4 days later * * *."
[3] Affiant stated she purchased intoxicating liquor and observed a large quantity stored for purposes of sale on the premises. Search made 12 days later was held to be based on warrant issued on probable cause. The court stated: "* * * Each case must depend upon its own facts. The person or persons who are charged with having whiskey in their possession, the quantity of liquor, and the place where it is kept, may all he taken into account, as well as the alleged sale, and the lapse of time." (Emphasis here and elsewhere supplied.)
[4] Here remoteness as well as lack of particularity of time denied probable cause at the time of the issuance of the warrant. The court said: "* * * The facts stated must so relate to the time when the search warrant is issued that probable cause for believing that the person sought to be searched then possesses the forbidden articles, or that they are then in the premises sought to be searched is thereby created in the mind of the officer issuing the warrant." See also Boone v. Commonwealth, 206 Ky. 657, 268 S.W. 286 (1925).
[5] The affidavits of two persons stated that they had observed the sale of intoxicating liquors at the premises, that they saw jugs and bottles delivered to others, and that the liquor was unlawfully manufactured and stored on the premises. These stated facts occurred on January 3, and the affidavit was made on January 28. The court held the search warrant was issued without probable cause that illegal acts were performed or contraband existed on the premises on the date of the warrant.
[6] The court held probable cause could still be established under affidavit executed nine days after occurrence when the state of facts gave probable cause for a continuing operation.
[7] Purchases of liquor from the owner of a clothing store on the store premises 12 days before the affidavit were not sufficient to establish probable cause.
[8] Where the affidavits indicated that the premises were fitted in a permanent fashion for the sale of liquor (a saloon), and the affidavits were made 10 days later, the court held probable cause could be found that the condition continued to exist.
[9] Statement of a single purchase of liquor two months before affidavit was insufficient to establish probable cause.
[10] Affidavit made the day following an occurrence where a quantity of what was believed to be heroin was observed on the premises was held to establish probable cause.
[11] Four-day delay between factual occurrence and affidavit was considered too long where the affidavit contained no facts of a continuing violation.
[12] Affidavit alleging one act of gambling six days before application for warrant did not establish probable cause on the date of warrant.
[13] Allegation of continuing activities from June 16 to July 26 with affidavit made eight days later on August 2 was held to establish probable cause.
[14] Affidavit eight days after purchase which stated that affiant saw a quantity of narcotics in the possession of the defendant was held to establish continuing probable cause.
[15] Affidavit based on information received by affiant that the defendant "kept a ready supply of heroin on hand in the apartment" was a statement supporting probable cause at the moment of the issuance of the warrant.
[16] The court held that, even under the assumption that counterfeiting continued throughout 1965, affidavit made 17 weeks later did not establish probable cause that counterfeit notes and counterfeiting paraphernalia were present then upon the premises sought to be searched. This case cited and quoted from instructions to United States Commissioners, in effect for 20 years, as follows: "A showing to the effect that the property to be seized was at the place to be searched a substantial time before the application is made does not justify the issuance of a search warrant, for the reason that during the intervening period the property may have been moved away. The facts must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant." Manual for United States Commissioners 24 (1948).
[17] Since the affiants chose the word "subject" in this part of the affidavit and the word "occupant" in another part of the affidavit, it could be presumed that a distinction was intended and that someone other than the occupant made the sale.