392 So.2d 419 (1980)
STATE of Louisiana
v.
Richard WICHERS.
No. 66855.
Supreme Court of Louisiana.
December 15, 1980.
Rehearing Denied January 26, 1981.
*420 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, Asst. Dist. Atty., for plaintiff-appellee.
Ronald L. Monroe, New Orleans, for defendant-appellant.
MARCUS, Justice.
Richard Wichers was charged by one information with possession of marijuana in violation of La.R.S. 40:967 and by another information in separate counts with possession of diazepam in violation of La.R.S. 40:969 and of methaqualone in violation of La.R.S. 40:967. Defendant entered pleas of *421 not guilty to the charges. After a hearing, the trial judge denied defendant's motion to suppress. Thereafter, defendant withdrew his former pleas of not guilty and entered pleas of guilty as charged, reserving his right to appeal the court's denial of his motion to suppress. The court placed defendant on probation for one year in connection with his marijuana conviction and on probation for three years on each of the other convictions to run concurrently with each other and the probation for the marijuana conviction. On appeal, defendant relies on one assignment of error for reversal of his convictions and sentences.
Defendant contends the trial judge erred in denying his motion to suppress physical evidence. He argues first that the search warrant was improperly issued and second, even if the warrant was valid, the search of his person was illegal; hence, the drugs seized as a result of the search must be suppressed.
The search warrant was issued to search the premises located at 9301 Airline Highway, London Lodge Motel, room 712, for the purpose of seizing "[a]ll contraband controlled dangerous substances, more particularly Marijuana and all documents and instrumentalities related to its distribution." The warrant was issued based upon facts recited in the affidavit by Officers Ronald Jenkins, Harry O'Neal and Kenneth Baudouin. The facts recited in the affidavit to establish probable cause were based on information received from a reliable confidential informant and independent observations by the officers. The affidavit was signed and the search warrant was issued and executed on October 19, 1979.
Shortly before 7:45 p. m. on that date, the officers arrived at the London Lodge Motel to execute the search warrant. When no one responded to their knocks on the door of room 712, the officers obtained a pass key to gain entry. Approximately fifteen minutes later, while the officers were in the process of completing the search of the room, defendant Wichers, Ben Levy and a woman arrived at the motel and opened the door with a key. One of the officers stated that they were police officers and that they had a search warrant. Defendant and his companions closed the door and began running. One of the officers caught defendant, pushed him to the ground, and conducted a search of his person, resulting in the recovery of the drugs upon which these prosecutions are based.
The affidavit generally recited the following facts to establish probable cause for issuance of the search warrant:
(1) On October 19, 1979, Narcotics Officer Ronald Jenkins spoke with a reliable confidential informant whose information in the past had been instrumental in the arrest and conviction of narcotics violators. The informant advised the officer that two white males named Ben Levy and "Richie Wishes" were "secreting" and selling wholesale quantities of marijuana at room 712 of the London Lodge Motel. He stated that the selling price was $400 per pound and that at the last visit to the motel "between 50-100 pounds was seen." He further advised that on October 14, 1979, "200 pounds was seen, so the marijuana was being sold at a good rate."
(2) A check with the management of the London Lodge Motel reflected that a Ben Levy was registered in room 712.
(3) At about 2:30 that afternoon, affiants established a surveillance of room 712 of the London Lodge Motel. At 2:40 p. m., the officers observed a car pull up to the front of the motel. Its driver, a white male, exited the vehicle and knocked on the door of room 712. He was let into the room and about five minutes later exited the room carrying a brown paper bag with newspaper on the top which was placed in the trunk of the car. The driver once again entered room 712 and left carrying a paper bag similar to the first one. The bag was also placed in the trunk of the car. The driver then reentered his car and departed.
(4) At 3:10 p. m., officers observed a pickup truck pull up to the front of the motel. The driver exited the vehicle, took what appeared to be currency out of his wallet, walked up to room 712 and knocked on the door. As the door was opened, the *422 driver handed the suspected currency to one of the room's occupants and then entered the room. Seven minutes later, he left the room carrying a partially-compressed green plastic garbage bag under his arm. He then placed the bag behind the front seat of the truck and departed.
Based on the information received from the confidential informant and the observations of the officers, the affiants stated that it was their belief that "contraband controlled dangerous substances were being secreted and sold from room 712 of the London Lodge Motel located at 9301 Airline Highway" and requested that a search warrant be issued.
Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; La.Const. art. 1 § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Richards, 357 So.2d 1128 (La.1978); State v. Smith, 350 So.2d 1178 (La.1977); State v. Williams, 338 So.2d 1365 (La.1976); State v. Sierra, 338 So.2d 609 (La.1976); State v. Hightower, 272 So.2d 363 (La.1973). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); State v. Richards, supra; State v. Smith, supra; State Williams, supra; State v. Sierra, supra; State v. Holmes, 254 La. 501, 225 So.2d 1 (1969).
In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court set forth, in a "twopronged test," the criteria which a magistrate must follow in determining if an affidavit based upon hearsay has established probable cause for the issuance of a search warrant; (1) the affiant must articulate the basis for his belief that the informant is trustworthy, and (2) the affidavit must indicate the underlying circumstances from which the informant concluded that the narcotics were where he contended they would be. State v. Richards, supra; State v. Joseph, 351 So.2d 1162 (La.1977). Hence, the reliability of both the informant and his information must be demonstrated in the affidavit. Later, the Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), made the criteria more flexible by allowing an informant's tip which is inadequate under Aguilar standards to be corroborated by independent sources. These rules were adopted by this court in State v. Paciera, 290 So.2d 681, 685-86 (La.1974):
The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information.
The affidavit in the instant case satisfies the first Aguilar standard. It states *423 that the informant has given information in the past that was instrumental in the arrest and conviction of narcotics violators.
In addition, the affidavit must satisfy the second Aguilar standard by demonstrating the reliability of the informant's information. In the instant case, the affidavit states that on October 19, 1979, the informant advised Officer Jenkins that defendant and Ben Levy were "secreting" and selling wholesale quantities of marijuana from room 712 of the London Lodge Motel. The informant stated that on October 14 (some five days earlier), 200 pounds "was seen" but that at the last visit to the motel "between 50-100 pounds was seen." It is obvious that the last observation of the marijuana was made at some point in time between October 14 and 19. While the marijuana was selling at a good rate, the observations of the officers of apparent drug transactions at room 712 of the motel on the afternoon of October 19 made it reasonable for the affiants to believe that drugs were still located in and being sold from the motel room. Moreover, it is reasonable to infer from the facts related to the officer that the marijuana was personally observed by the informant. Thus, the reliability of the informant's information is supported by the direct personal observation of the marijuana by the informant and the independent observations of the officers.
In sum, the reliability of both the informant and his information were demonstrated in the affidavit. Hence, there was ample probable cause for the issuance of the search warrant.
Defendant further contends that, even if the warrant to search room 712 was valid, the search of his person was nonetheless illegal. Hence, the recovery of the drugs seized as the result of the search must be suppressed. We do not agree.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonablesubject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a search incident to a lawful arrest made of a person and the area in his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Tomasetti, 381 So.2d 420 (La.1980). An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time the officer tells an accused he is under arrest. State v. Marks, 337 So.2d 1177 (La.1976).
In the instant case, defendant was arrested when he was tackled by the officer and his freedom of movement curtailed. The arrest was also lawful. The officers had legal authority to be present in room 712 as they were executing a valid search warrant. The warrant was based on probable cause that marijuana was located in and being sold from the motel room by its two male occupants. While the officers were conducting the search, defendant, a woman, and another man arrived at the motel and opened the door to room 712 with a key. It was reasonable for the officers to believe that a person accompanied by his companions opening a locked motel door with a key was the room's occupant or was connected with the room's occupant. One of the officers announced their authority. Upon seeing the officers, defendant and his companions closed the door and ran away. Defendant was chased by one of the officers who, after tackling him, searched him and found the drugs in question. Under these circumstances, probable cause existed to arrest defendant as it was reasonable for the officers to believe that defendant was either the person named in the warrant as the occupant of the room where the drugs were allegedly located and being sold or was connected with the alleged illegal activity. Hence, the search made by the officer fell within the search incident to a lawful arrest exception to the warrant requirement.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
*424 DIXON, C. J., dissents with reasons.
CALOGERO, J., dissents.
DENNIS, J., dissents for reasons assigned by DIXON, C. J.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The officer who arrested Wichers testified that he had searched the defendant pursuant to an arrest for resisting a lawful arrest. R.S. 14:108. The defendant testified that he was not placed under arrest until after the seizure of the narcotics. This court stated in State v. Marks, 337 So.2d 1177, 1182 (La.1976):
"... It is the circumstances indicating an intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer's statement: `You are under arrest,' that are determinative of when an arrest is actually made. State v. Warren, 283 So.2d 740 (La.1973)...."
As the majority opinion states, the defendant was "arrested" when he was tackled by the officer and his freedom of movement curtailed. The question is whether probable cause to arrest existed at this time. The defendant contends that no probable cause existed to make a lawful arrest, because the "facts and circumstances within the arresting officer's knowledge" were not "sufficient to justify a man of average caution" in the belief that the defendant had committed or was committing an offense. State v. Herbert, 351 So.2d 434, 440 (La.1977).
Neither the officer who arrested Wichers nor any of the other officers knew what Wichers looked like. Therefore, probable cause could not have been based upon the officer's recognition of the defendant as the man referred to in the search warrant. Furthermore, the officers who were conducting the search had not found any drugs in the motel room. Thus, probable cause could not be based on information discovered during the search. The only concrete fact within the arresting officer's knowledge was that Wichers had initially attempted to enter a room where suspected drug sales had occurred, but later ran when he saw the room filled with strangers. As this court stated in State v. Franklin, 353 So.2d 1315, 1319 (La.1977):
"... the fact that a person runs or flees does not in and of itself establish probable cause. See, State v. Herbert, 351 So.2d 434 (La.1977). Flight does not always indicate guilt; it may result from fear and possibly other causes. Even where flight does reasonably appear designed to avoid apprehension, reasonable cause will not arise unless the flight, combined with other information upon which the officers are entitled to rely, would indicate to a reasonable mind that the combination of circumstances is inconsistent with any innocent pursuit...."
In the instant case, the defendant's flight at the sight of the officers in his room is indicative of fear. The officers were not in uniform, and the defendant says that he did not hear them announce their authority. His fright would have been justified when he saw the room full of strangers who were going through his belongings. Even assuming that the defendant's flight was designed to avoid apprehension, that fact, standing alone, does not constitute probable cause.
As an alternative justification for the search of defendant, the state contends that the search was conducted pursuant to an investigatory stop. C.Cr.P. 215.1. This argument is unpersuasive. Even assuming that the seizure of Wichers was a detention authorized by article 215.1, an officer is not authorized to frisk the detainee unless he "reasonably suspects that he is in danger of life or limb." In the instant case, the defendant made no menacing or threatening moves which might have led the officer to believe he was armed. Furthermore, the arresting officer testified that he was conducting a full search for both weapons and evidence, and that the search was pursuant to an arrest. This was an arrest and a search, not a limited pat down of the outer clothing.
*425 Because the search conducted in the instant case was not justified by any of the exceptions to the warrant requirement, the trial judge erred in denying the defendant's motion to suppress the evidence seized from him, and we should reverse the conviction and sentence.